FILED
CLERK, U.S. DISTRICT COURT

AUG - 7 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LARRY D. SPARKS,              )    NO. EDCV 08-97-CT
                              )
          Plaintiff,          )    OPINION AND ORDER
                              )
     v.                       )
                              )
MICHAEL J. ASTRUE,            )
Commissioner of               )
Social Security,              )
                              )
                              )
          Defendant.          )
_____)

     For the reasons set forth below, it is ordered that judgment

be entered in favor of defendant Commissioner of Social Security

("the Commissioner") because the Commissioner's decision is

supported by substantial evidence and is free from material legal

error.

                    SUMMARY OF PROCEEDINGS

     On January 31, 2008, plaintiff, Larry D. Sparks ("plaintiff"),

filed a complaint seeking judicial review of the denial of benefits

by the Commissioner pursuant to the Social Security Act ("the

Act").  Plaintiff received a partially favorable decision and was

awarded benefits for the time period beginning August 17, 2006, but

seeks review of the Commissioner's denial of benefits for the time period prior to August 17, 2006.  The parties filed a consent to proceed before the magistrate judge.  On June 24, 2008, plaintiff filed a memorandum of points and authorities in support of plaintiff's complaint.  On July 28, 2008, the Commissioner filed a brief in opposition.

SUMMARY OF ADMINISTRATIVE RECORD

1.   Proceedings

On January 19, 2005, plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability since August 24, 2004 due to mental disorders, stroke, left knee problems, arthritis in back, hands legs, brain damage, diabetes, depression and high blood pressure.  (TR 13, 61).[1]  The application was denied initially and upon reconsideration.  (TR 51-55, 57-61).

On August 12, 2005, plaintiff filed a request for a hearing before an administrative law judge ("ALJ").  (TR 50).  On December 7, 2006, plaintiff, represented by an attorney, appeared and testified before an ALJ.  (TR 365-76).  Plaintiff's mother also testified.  However, at the hearing plaintiff's counsel requested additional time to submit updated medical records and the ALJ agreed that updated records were needed.  (TR 375-76).

On April 23, 2007, after additional records were submitted and plaintiff was examined consultatively for a second time, a second hearing was held.  (TR 377-387).  Plaintiff and his mother again

---

[1]   "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

testified.   In addition, the ALJ heard testimony by a medical
expert ("ME") and a vocational expert ("VE").   On May 9, 2007, the
ALJ issued a decision that plaintiff was disabled after August 17,
2006 when he suffered a heart attack.   (TR 19).   The ALJ further
found that plaintiff was not disabled prior to that date because,
even considering his severe impairments of the vascular system,
endocrine system and musculoskeletal system, plaintiff retained the
residual functional capacity ("RFC") to perform light work with
restrictions on working at heights, in temperature extremes, or
near unguarded hazardous conditions, and restrictions on kneeling,
crawling, balancing, and stooping.   (TR 16).   The ALJ found that
this RFC enabled plaintiff to perform jobs that existed in
significant numbers in the economy.   (TR 18-19).

On December 12, 2007, the Social Security Appeals Council
denied plaintiff's request to review the ALJ's decision.   (TR 4-6).
Accordingly, the ALJ's decision stands as the final decision of the
Commissioner.   Plaintiff subsequently sought judicial review in
this court.

2.   Summary Of The Evidence

The ALJ's decision is attached as an exhibit to this opinion
and order and, except as otherwise noted, materially summarizes the
evidence in the case.

PLAINTIFF'S CONTENTIONS

Plaintiff contends as follows:

1.   The ALJ erred by failing to obtain vocational expert testimony
     regarding the effect of the plaintiff's nonexertional
     limitations;

2.   The ALJ erred by failing to consider the state agency
     physician's opinion that plaintiff should avoid "uneven
     terrain";

3.   The ALJ failed to consider the state agency psychiatrist's
     mental RFC assessment;

4.   The ALJ failed to consider the treating psychiatrist's
     findings regarding plaintiff's diagnosed depression; and,

5.   The ALJ failed to consider the type, dosage, effectiveness,
     and side effects of plaintiff's medications.

## STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's
decision to determine if: (1) the Commissioner's findings are
supported by substantial evidence; and, (2) the Commissioner used
proper legal standards.  Macri v. Chater, 93 F.3d 540, 543 (9th
Cir. 1996).  Substantial evidence means "more than a mere
scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but
less than a preponderance.  Sandgathe v. Chater, 108 F.3d 978, 980
(9th Cir. 1997).

When the evidence can reasonably support either affirming or
reversing the Commissioner's conclusion, however, the Court may not
substitute its judgment for that of the Commissioner.  Flaten v.
Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th
Cir. 1995).

## DISCUSSION

1.   The Sequential Evaluation

A person is "disabled" for the purpose of receiving social
security benefits if he or she is unable to "engage in any

4

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled.  First, it is determined whether the person is engaged in "substantial gainful activity."  If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments.  If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments."  If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work.  If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.  The person is entitled to benefits only if the person is unable to perform other work.  20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

2.  <u>Issues</u>

A.   <u>Vocational Expert Testimony</u> (Issue 1)

Plaintiff contends that the ALJ erred by failing to obtain vocational expert testimony regarding the effect of plaintiff's nonexertional limitations.

The ALJ found that plaintiff was unable to perform his past relevant work as a bar tender.  (TR 18).  Accordingly, the burden shifted to the Commissioner to demonstrate that plaintiff can perform "other jobs that exist in substantial numbers in the national economy."  <u>Lewis v. Apfel</u>, 236 F.3d 503, 508 (9th Cir. 2001); 20 C.F.R. § 416.920(f).

To improve the uniformity and efficiency of this determination, the Social Security Administration established the Medical-Vocational Guidelines ("the grids"), which "consist of a matrix of the four factors identified by Congress – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." <u>Heckler v. Campbell</u>, 461 U.S. 458, 461-62 (1983).

When the grids correspond to the plaintiff's qualifications, "the guidelines direct a conclusion as to whether work exists that the claimant could perform." <u>Id.</u> at 462.  When the grids do not match a plaintiff's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, or (2) rely on a vocational expert when the plaintiff has significant non-exertional limitations. <u>Hoopai v. Astrue</u>, 499 F.3d 1071, 1075 (9th Cir. 2007), citing <u>Desrosiers v. Sec'y of Health and Human Servs.</u>, 846 F.2d 573, 577

1  (9th Cir.1988).

2      The ALJ can use the grids without vocational expert testimony

3  even when a non-exertional limitation is alleged because the grids

4  "provide for the evaluation of [plaintiffs] asserting both

5  exertional and non-exertional limitations."  Hoopai v. Astrue, 499

6  F.3d at 1075, citing Razey v. Heckler, 785 F.2d 1426, 1430, amended

7  at 794 F.2d 1348 (9th Cir.1986).  However, the grids are

8  inapplicable and the ALJ must resort to vocational expert testimony

9  "[w]hen a [plaintiff]'s non-exertional limitations are

10  'sufficiently severe' so as to significantly limit the range of

11  work permitted by the [plaintiff]'s exertional limitations."  Id.,

12  citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir.1988).

13      Here, the ALJ found that plaintiff had the following residual

14  functional capacity prior to August 17, 2006:

15      The [plaintiff] could lift 20 pounds occasionally and 10
       pounds frequently.  He could stand and walk for six hours
16      out of an 8-hour work day, and he could sit for 6 hours
       out of an 8-hour work day.  He could not work at heights.
17      He could not kneel or crawl.  He could occasionally
       balance or stoop.  He could not work in temperature
18      extremes or near unguarded hazardous conditions.

19  (TR 16).

20      The ALJ further found that given this RFC, plaintiff was not

21  disabled under the framework of Medical-Vocational Rule 202.18 of

22  the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P,

23  App. 2.  This rule directs a finding of "not disabled" for persons

24  of plaintiff's age, and education, who can perform the full range

25  of light work and have previous work experience that is skilled or

26

27

28
                                    7

semi-skilled, but the skills are not transferable.[2]

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, 20 C.F.R. § 404.1567(b), and requires walking and standing for approximately six hours out of an eight hour workday. Social Security Ruling ("SSR") 83-10. The ALJ found that plaintiff's additional limitations "had little or no effect on the occupational base of unskilled light jobs." (TR 19).

Most of the additional limitations found by the ALJ have been identified in SSRs 83-14 and 83-15 as not significantly impacting the occupational base of light jobs. For example, to perform substantially all of the exertional requirements of most light jobs, only occasional stooping is required. SSR 83-14. Restrictions from kneeling and crawling, or from being around unprotected heights and dangerous machinery do not significantly impact the occupational job base for light work. SSR 83-14, 83-15. Where a person has some limitation on balancing and climbing, and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. SSR 83-15.

In any event, any error in the ALJ's failure to expressly refer to or rely on VE testimony in his decision was harmless. the VE, Joseph Mooney, testified at plaintiff's 2007 hearing. Mr.

---

[2]Plaintiff's past relevant work was as a bartender. The Dictionary of Occupational Titles ("DOT") classifies this job as "semi-skilled." See DOT # 312.474-101 (bartender job has a specific vocational preparation ["SVP"] level of 3); see also Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) ("semi-skilled work corresponds to an SVP of 3-4").

1  Mooney heard and was specifically asked to consider the testimony
2  of the ME, Dr. Lowell Sparks.[3]   Dr. Sparks opined that, prior to
3  August 17, 2006, plaintiff's RFC was for light work with
4  essentially the same postural and environmental limitations as
5  those assessed by the ALJ.  (TR 381).  The VE testified that this
6  RFC permitted plaintiff to perform essentially the full range of
7  light work.  (TR 385-86).  The VE further testified that a person
8  of plaintiff's assessed RFC who was limited to unskilled work could
9  perform thousands of jobs that existed in the economy.  (TR 386).

10      Accordingly, the ALJ did not materially err in his
11  determination that, prior to August 17, 2006, considering
12  plaintiff's age, education, work experience, and RFC, there were
13  jobs that existed in significant numbers in the national economy
14  that plaintiff could have performed.

15      B.   State Agency Physician (Issue 2)

16      Plaintiff contends that the ALJ erred by failing to properly
17  consider the opinion of state agency physician, Dr. G. Taylor-
18  Holmes, that plaintiff should avoid "uneven terrain."  (See TR
19  115).

20      An ALJ must consider all medical opinions of record, including
21  those of state agency physicians who review the record.  See 20
22  C.F.R. § 416.927(f)(2)(i) ("administrative law judges must consider
23  findings of State agency medical and psychological consultants or
24  other program physicians or psychologists as opinion evidence").

25      Here, the ALJ adopted an RFC which included nearly all the

_____

27      [3]Dr. Sparks is not related to plaintiff.  (TR 382).

28                                   9

limitations assessed by Dr. Taylor-Holmes, (compare TR 16 with TR 111-117), and was consistent with the findings of the consultative examiner, Dr. Gerson, who examined plaintiff consultatively on April 11, 2005 and found that plaintiff could perform light work. (TR 104-108).

Dr. Taylor-Holmes' additional restriction to avoid "uneven terrain" was immaterial in light of the fact that the VE identified several jobs that plaintiff could do, all of which exist in the regional economy in numbers "well in excess of 2,000," (TR 386), and do not require working on "uneven terrain." See, e.g., Dictionary of Occupational Titles ("DOT") # 706.684-022 (assembler, small products I). Accordingly, any error in the failure to include this additional restriction was harmless. See Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006).

C.   State Agency Psychiatrist (Issue # 3)

Plaintiff also contends that the ALJ failed to discuss the moderate mental limitations determined by state agency psychiatrists, Drs. Michael Skopec and H. Amado. (See TR 121-32).

As discussed above, "administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence." 20 CFR § 416.927(f)(2)(i). Thus, ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions." Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 at * 2 (S.S.A.).

Here, the ALJ did not ignore the opinions of Drs. Amado and Skopec, who assessed plaintiff's mental RFC in May and July of

1 | 2005.   Instead, he rejected their opinions based on the current
2 | medical evidence.   (TR 18).

3 |     The evidence considered included the findings of Dr. Romualdo
4 | R. Rodriguez, who conducted a consultative psychiatric evaluation
5 | of plaintiff on April 10, 2005 and concluded that plaintiff had
6 | dysthymia and alcohol and substance abuse "supposedly in
7 | remission."   (TR 101).   Dr. Rodriguez found that, at most, these
8 | impairments caused slight limitations on plaintiff's ability to
9 | perform workplace functions.   (TR 101-103).   Dr. Rodriguez also
10 | found that plaintiff had failed to take his medication, Paxil, as
11 | prescribed, (TR 98), and that "if [plaintiff] was followed by a
12 | psychiatrist and maintained proper use of antidepressants he could
13 | easily recover from what depression he does have."   (TR 102).   The
14 | ALJ was entitled to give more weight to the opinions of the
15 | consultative examiner than those of the state agency physicians.
16 | See 20 C.F.R. § 416.927 (d)(1); see also Lester v. Chater, 81 F.3d
17 | 821, 830 (9th Cir. 1996)(the opinion of an examining physician is
18 | generally entitled to greater weight than that of a non-examining
19 | physician).

20 |     In addition, plaintiff was examined by Dr. Rodriguez again on
21 | January 3, 2007, after plaintiff's August 2006 heart attack.   At
22 | that time, Dr. Rodriguez found evidence of a learning disorder and
23 | a depressive disorder, but again found that plaintiff's mental
24 | impairments caused no more than slight limitations on his ability
25 | to perform workplace functions.   (TR 300-301).   The opinions of the
26 | examining psychiatrist, which are consistent with the treatment
27 | records and supported by his independent findings, constitute
28 |

11

1  substantial evidence supporting the ALJ's decision.  See <u>Orn v.</u>

2  <u>Astrue</u>, 495 F.3d 625, 633(9th Cir. 2007)(examining physician's

3  opinion that rests on independent clinical findings constitutes

4  substantial evidence).

5      The ALJ did not materially err in his consideration of the

6  state agency psychiatrists' assessment.

7      D.  <u>Treating Psychiatrist</u> (Issue 4)

8      Plaintiff also asserts that the ALJ failed to give proper

9  weight to the opinion of plaintiff's treating psychiatrist.

10     While a treating physician's opinion generally is entitled to

11 great weight, "[t]he ALJ may disregard the treating physician's

12 opinion whether or not that opinion is contradicted." <u>Andrews v.</u>

13 <u>Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citation omitted).

14 A medical opinion is considered uncontroverted if all the

15 underlying medical findings in the record of plaintiff's physical

16 impairments are similar.  <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230

17 (9th Cir. 1987).  To reject the uncontroverted opinion of

18 plaintiff's physician, the ALJ must present clear and convincing

19 reasons for doing so.  <u>Andrews v. Shalala</u>, 53 F.3d at 1041

20 (citation omitted).  If the treating physician's opinion is

21 contradicted by other doctors, the Commissioner may not reject the

22 opinion without providing "specific and legitimate reasons" for

23 doing so that are supported by substantial evidence.  <u>Rollins v.</u>

24 <u>Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001) (citation omitted).

25     Plaintiff contends that the ALJ failed to consider the

26 December 8, 2004 notes of plaintiff's "treating psychiatrist,"

27 which state "depression – not well controlled" and indicate the

28
                                   12

doctor's direction to increase plaintiff's Paxil prescription to "50 mg twice daily." (TR 157). In fact, the ALJ considered all plaintiff's medical records, including the treatment records from Riverside County Regional Medical Center, dated December 8, 2004 (Exhibit B6F at 23). (See TR 16 [citing treatment records from Riverside County Regional Medical Center, including Exhibit B6F]). These records primarily consist of treatment notes concerning visits for physical, rather than mental, complaints and have minimal references to depression. In addition, when plaintiff's psychological condition is noted on examination, it is generally reported as normal. (See TR 141, 161, 194, 198, 204, 268, 338).

Moreover, these treatment notes, which are from a general practitioner and not a "treating psychiatrist" as plaintiff contends, (see TR 98, 102), do not contain any doctor's opinion as to whether plaintiff's depression significantly impacts his functioning or ability to work and are not inconsistent with the ALJ's conclusion that plaintiff's depression is non-severe. Further, as discussed above, only a few months after the date of these treatment notes, Dr. Rodriguez found that plaintiff was not taking Paxil as prescribed. Thus, these treatment notes are not inconsistent with the ALJ's finding that "if [plaintiff] remains sober and is medically compliant, any depression [he] does have will significantly improve." (TR 17).

The ALJ did not materially err in his consideration of the identified treatment notes.

D.   <u>Medication Side Effects</u> (Issue 5)

Plaintiff argues that the ALJ failed to consider the potential

13

1  side effects of Paxil, which was prescribed to plaintiff for
2  depression.

3       Although side effects of medications are among the factors the
4  ALJ should consider in evaluating plaintiff's symptoms, side
5  effects not "severe enough to affect [plaintiff's] ability to work"
6  are properly excluded.  Osenbrock v. Apfel, 240 F.3d 1157, 1164
7  (9th Cir. 2001).  Here, plaintiff lists possible side effects of
8  Paxil according to medical literature and contends, with no
9  citation to the record, that "it is likely that . . . Paxil may
10 indeed cause significant side effects."  (Plaintiff's brief at 9).
11 As with nearly every drug, a number of possible side effects have
12 been identified.  However, the record is devoid of any indication
13 that plaintiff is suffering from any such side effects, let alone
14 any side effects significant enough to impact his ability to work.

15      The ALJ's consideration of the potential side effects of Paxil
16 is free from material error.

17                          CONCLUSION

18      Plaintiff clearly has severe impairments and, in fact, was
19 found disabled and awarded disability benefits from August 17, 2006
20 forward.  However, a plaintiff who can still perform work in the
21 national economy, even with a severe impairment, is not disabled as
22 that term is defined by the Act.  See generally Baxter v. Sullivan,
23 923 F.2d 1391, 1395 (9th Cir. 1991).  Furthermore, if the evidence
24 can reasonably support either affirming or reversing the
25 Commissioner's conclusion, the court may not substitute its
26 judgment for that of the Commissioner.  Flaten v. Secretary of
27 Health and Human Services, 44 F.3d at 1457.

28
                              14

1     After careful consideration of the record as a whole, the

2  magistrate judge concludes that the Commissioner's decision that

3  plaintiff was not disabled prior to August 17, 2006 is supported by

4  substantial evidence and is free from material legal error.

5  Accordingly, it is ordered that judgment be entered in favor of the

6  Commissioner.

7

8  DATED: *August 7, 2008*

9                              _____

10                  CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

**13**

## DECISION

**IN THE CASE OF**                                **CLAIM FOR**

Larry David James Sparks                          Supplemental Security Income
(Claimant)

(Wage Earner)                                     (Social Security Number)

### JURISDICTION AND PROCEDURAL HISTORY

On January 19, 2005, the claimant filed an application for supplemental security income, alleging disability beginning August 24, 2004. The claim was denied initially on May 10, 2005, and upon reconsideration on July 22, 2005. Thereafter, the claimant filed a timely written request for hearing on August 11, 2005 (20 CFR 416.1429 *et seq.*). The claimant appeared and testified at a hearing held on April 23, 2007, in San Bernardino, CA. Also appearing and testifying were Lowell L. Sparks, Jr., an impartial medical expert; Jo seph M. Mooney, an impartial vocational expert; and Joyce Walkup, the claimant's mother. The claimant is represented by Bill Latour, an attorney.

### ISSUES

The issue is whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), I have considered the complete medical history consistent with 20 CFR 416.912(d).

If the claimant is under a disability and there is medical evidence of a substance use disorder(s), there is an additional issue as to whether the substance use disorder(s) is a contributing factor material to the determination of disability under section 1614(a)(3)(j) of the Social Security Act. If so, the individual is not under a disability.

After careful consideration of all the evidence, I conclude that the claimant was not disabled prior to August 17, 2006, but became disabled on that date and has continued to be disabled through the date of this decision.

See Next Page

14

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).

See Next Page

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 416.920(g)), I must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 416.912(g) and 416.960(c)).

If it is found that the claimant is disabled and there is medical evidence of a substance use disorder(s), I must determine if the substance use disorder(s) is a contributing factor material to the determination of disability. In making this determination, I must evaluate the extent to which the claimant's mental and physical limitations would remain if the claimant stopped the substance use. If the remaining limitations would not be disabling, the substance use disorder(s) is a contributing factor material to the determination of disability (20 CFR 416.935). If so, the claimant is not disabled.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

**1.   The claimant asserted he has not engaged in substantial gainful activity since August 24, 2004, the alleged onset date (20 CFR 416.920(b) and 416.971 *et seq.*).**

**2.   Since the alleged onset date of disability, the claimant had severe impairments of the vascular system, endocrine system, and musculoskeletal system (20 CFR 416.920(c)).**

The claimant also has a depressive disorder and a history of polysubstance abuse, but these conditions are considered non-severe because they have no more than a minimal effect on the claimant's ability to engage in work related activities.

**3.   Prior to August 17, 2006, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).**

See Next Page

Regarding the claimant's mental impairments, the claimant had mild restrictions in his activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in concentration, persistence, or pace; and no repeated episodes of decompensation.

**4.  Prior to August 17, 2006, the claimant had the residual functional capacity to perform light exertion. The claimant could lift 20 pounds occasionally and 10 pounds frequently. He could stand and walk for six hours out of an 8-hour work day, and he could sit for 6 hours out of an 8-hour work day. He could not work at heights. He could not kneel or crawl. He could occasionally balance and stoop. He could not work in temperature extremes or near unguarded hazardous conditions.**

The evidence of record shows that the claimant receives most of his treatment at Riverside County Regional Medical Center (Exhibits B6F, B7F, B8F, B12F, B13F).    The claimant has been seen for management of his hypertension and diabetes as well as transient complaints of low back pain (Exhibit B6F, pp. 11, 22, 25).    The record reveals that the claimant was non-compliant with his anti-hypertensive medication and insulin (Exhibit B7F, p. 14).    The claimant was seen on numerous occasions for back pain, but there were no significant findings made on examination, and it appears that the pain was provoked by arduous labor.  On June 9, 2005, the claimant complained of low back pain since trimming some trees a few days prior (Exhibit B6F, p. 6).  The claimant was seen again for back pain in June 2006, which he said was brought on by yard work (Exhibit B8F, p. 11).

Dr. Steven E. Gerson conducted an internal medicine examination of the claimant on April 11, 2005 (Exhibit B3F).    The claimant complained of back pain, numbness of the legs, knee pain, diabetes, and residuals from a stroke which occurred five years prior.  The physical examination revealed no retinopathy of the eyes.  While the claimant had some tenderness on range of motion testing of the back, motor strength and reflexes were intact.  The claimant had decreased sensation to pinprick in a stocking glove distribution of the left lower extremity.  Heart and lungs wounds were normal.  The claimant exhibited left knee joint tenderness, trace crepitus, and 1+ effusion. Dr. Gerson concluded that the claimant could perform light exertion (Exhibit B3F, pp. 3-5), which is consistent with the residual functional capacity found herein.

On August 17, 2006, the claimant's condition significantly worsened.  The claimant was seen in the emergency department at Riverside Regional Medical Center for complaints of right facial numbness, and pain in his right arm and right chest area (Exhibit B8F, p. 9).  Laboratory testing confirmed the claimant had suffered an acute myocardial infarction, and he was transferred to Loma Linda University Medical Center where he underwent stent placement to the right coronary artery, which was 100% occluded (Exhibit B9F, pp. 1, 54).  The right coronary artery was opened with the stent, but the left anterior descending artery had a 60% stenosis of the middle portion, and the first diagonal branch had a 70% proximal stenosis (Exhibit B9F, p. 8). On September 19, 2006, the claimant returned to the emergency room and complained of pain in the right groin area and right leg, with associated shortness of breath (Exhibit B8F, p. 6).  The claimant continues to have frequent shortness of breath and chest pain (Exhibit B12F, p. 3; Exhibit B13F, p. 24), and laboratory testing shows that the claimant has a moderate degree of myocardial scarring in the right coronary artery area (Exhibit B12F, p. 15).  The claimant has

See Next Page

also been treated for claudication of the lower extremities, right greater than left (Exhibit B13F, pp. 1-2).

I disagree with the opinion of Dr. Carl Sainten, who conducted an internal medicine examination on February 13, 2007, and who concluded that the claimant could perform medium exertion, since the overall evidence reveals that the claimant is much more limited.

Regarding the claimant's alleged mental impairments, there is no evidence the claimant is currently being treated by a psychiatrist, so the State Agency made arrangements for the claimant to undergo a consultative psychiatric examination.

Dr. Romualdo R. Rodriguez conducted a consultative psychiatric examination on April 10, 2005 (Exhibit B2F).   The claimant admitted to a history of polysubstance abuse, but he denied any current use of alcohol or drugs (Exhibit B2F, p. 3).  The claimant complained of memory and concentration problems, but the mental status examination was essentially benign (Exhibit B2F, pp. 2-5).  Dr. Rodriguez diagnosed dysthymia, polysubstance abuse, supposedly in remission, and alcohol dependence, supposedly in remission (Exhibit B2F, p. 5).  Dr. Rodriguez stated that if the claimant took his antidepressants as prescribed, the claimant could easily recover from any depression.  Dr. Rodriguez concluded the claimant was only slightly impaired due to his mental impairments (Exhibit B2F, p. 7).

On January 3, 2007, Dr. Rodriguez conducted another consultative psychiatric evaluation (Exhibit B10F).  Based on the results of his examination, Dr. Rodriguez again concluded that the claimant was only slightly impaired from a mental standpoint (Exhibit B10F, pp. 7-8).  I agree and adopt his conclusions.  There is no evidence the claimant has a significant psychiatric impairment, and he is not being regularly treated by any mental health source.  The record reveals that the claimant's treating physician prescribes Paxil for the claimant's condition.  The claimant does have a significant drug and alcohol history, and he maintains that he quit drinking and using drugs without attending any drug or rehabilitation program.  I agree with Dr. Rodriguez and find that if the claimant remains sober and is medically compliant, any depression the claimant does have will significantly improve.

The testimony of the claimant and his mother establish no different conclusions.  In response to leading questions by the representative, the claimant asserted he has occasional pain in his left knee, pain in his low back, and his hands and feet go numb.  He also said he had diurnal naps. The claimant was frequently seen in the emergency room for back pain, but the record does not show objective findings consistent with a debilitating back condition.  There is no evidence of chronic knee pain or numbness in the claimant's hands and feet prior to August 17, 2006, and there is no evidence of incontinence.  The claimant's blood pressure and diabetes were frequently uncontrolled, but the claimant was not medically compliant.  The claimant also alleged he had significant depression, but there is evidence the claimant did not take his medication as prescribed (Exhibit B2F, p. 2).  Prior to August 17, 2006, the claimant reported that he had a driver's license and could drive, but chose not to do so.  He ran errands, went shopping, cooked, made snacks, did household chores, and did yard and gardening work.  He also watched television, handled cash, and paid bills (Exhibit B2F, p. 5).

See Next Page

Joyce Walkup, the claimant's mother, testified the claimant complained of pain with too much standing and walking. She also said he has fatigue, poor grip, and is depressed. When asked if she had supported the claimant since he last worked in 1986, the mother said she had. She has an obvious motivation to alleviate her financial responsibility to her son. I also considered the Function Report Adult Third Party submitted by the claimant's mother (Exhibit B2E). Some of her answers supported the finding of not disabled prior to August 17, 2006. For example, she stated that her son spends his days watching television and drinking coffee (Exhibit B2E, p. 1). She said that he occasionally forgets to take his medication, but there is no evidence the claimant has a significant memory impairment. She also said he can prepare his own meals, he does laundry, cleaning, and yard work (Exhibit B2E, p. 3). He also shops for food, clothes, and cleaning supplies (Exhibit B2E, p. 4). Ms. Walkup reported that the claimant does not understand what he is reading, and occasionally the things he says do not make sense (Exhibit B2E, p. 5). However, Dr. Rodriguez did not find evidence of a significant organic brain disorder or learning disability during his thorough examination. While the claimant had difficulty spelling, and he used his fingers for counting while performing simple mathematics, his answers were accurate (Exhibit B10F, p. 7). I find no evidence the claimant had a significant mental impairment prior to August 17, 2006.

As for the opinion evidence, the State Agency review physicians concluded that the claimant could perform light exertion with preclusions from kneeling and crawling. They also recommended the claimant avoid concentrated exposure to extreme cold and heat and hazardous conditions (Exhibit B4F). Their opinion is consistent with the light residual functional capacity found herein. The State Agency review psychiatrists determined that the claimant could perform non-public simple repetitive tasks, based on the prior ALJ's decisions (Exhibit B1F, p. 3; Exhibit B5F). However, there is no current evidence of a severe mental impairment. I find that the claimant's mental condition has substantially improved since the date of the last decision. There is no current evidence that the claimant has more than slight impairment in activities of daily living, social functioning, or concentration, persistence, or pace. The claimant has not had episodes of withdrawal.

**5.   Prior to August 17, 2006, the claimant was unable to perform his past relevant work as a bar tender (20 CFR 416.965).**

**6.   The claimant was born on January 26, 1963 and is 43 years old, which is defined as a younger individual (20 CFR 416.963).**

**7.   The claimant has a limited education and is able to communicate in English (20 CFR 416.964).**

**8.   Prior to August 17, 2006, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**9.   Prior to August 17, 2006, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the**

See Next Page

national economy that the claimant could have performed **(20 CFR 416.960(c) and 416.966).**

In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision making (SSR 85-15).

Prior to August 17, 2006, if the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.18. However, the additional limitations had little or no effect on the occupational base of unskilled light jobs. A finding of "not disabled" is therefore appropriate under the framework of this rule.

**10. Beginning on August 17, 2006, the severity of the claimant's severe impairments of the vascular system, musculoskeletal system, and endocrine system met Listing 4.04C1d of Appendix 1.**

**11. The claimant was not disabled prior to  (20 CFR 416.920(g)), but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 416.920(d)).**

**12. The claimant's history of substance use disorder is not a contributing factor material to the determination of disability (20 CFR 404.1535).**

See Next Page

Larry David James Sparks ████████████  ●              Page 8 of 8

                                                              ∴∴  **20**

## DECISION

Based on the application for supplemental security income filed on January 19, 2005, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on August 17, 2006.

The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the nondisability requirements for these payments, and if eligible, the amount and the months for which payment will be made.

Since the claimant has a long history of alcohol and polysubstance abuse, it seems foolish to entrust either the past due lump sun or the periodic payments to him.  I recommend a public entity or institution as the representative payee.

                          _F. Keith Varni (signature)_

                          F. Keith Varni
                          Administrative Law Judge
                          **MAY 0 9 2007**
                          _____
                          Date

KF